UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | Criminal No. 11-0151(ESH) |
| JACQUELINE L. WHEELER, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On July 13, 2012, after an eight-day trial, a jury convicted Jacqueline L. Wheeler of one count of health care fraud, in violation of 18 U.S.C. § 1347 (Count 1), and thirty-four counts of false statements relating to health care matters, in violation of 18 U.S.C. § 1035 (Counts 2 through 35).[1]  The convictions were based on bills that she had submitted to the District of Columbia Medicaid program for payment for services which she claimed to have provided to D.C. Medicaid beneficiaries between January 2006 through April 2008.  Pending before the Court are defendant's motions for acquittal and new trial under Rules 29 and 30 and dismissal of Counts 2 through 35 as multiplicitous.  For the reasons stated herein, defendant's motions will be denied.

## ANALYSIS

**I.    RULE 29**

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  In reviewing

---

[1] For all counts, defendant was also charged under 18 U.S.C. § 2(b), which provides for liability as a principal for whoever "willfully causes an act [which is an offense to the United States] to be done."

a post-verdict motion for judgment of acquittal under Rule 29, a court "must view the evidence in the light most favorable to the verdict." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983).  A motion for a judgment of acquittal should be denied when the evidence is "sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt. Typically, the jury's determination will stand unless no reasonable juror could have found a defendant guilty beyond a reasonable doubt." *United States v. Cook*, 526 F. Supp. 2d 10, 18 (D.D.C. 2007), *aff'd,* 330 Fed. Appx. 1, 2 (D.C. Cir. 2009) (internal citations and quotation marks omitted).

Defendant moves pursuant to Rule 29(c) for a judgment notwithstanding the jury's verdict on all counts.  She argues that the evidence presented at trial did not support the inference that she "'knowingly and willfully' intended to defraud D.C. Medicaid, as is required under both § 1347 and § 1035." (Def.'s Mot. at 2.)

In "most cases in which the defendant's state of mind is at issue, it may be near impossible to establish the requisite mens rea through direct evidence" and therefore proof of intent must be inferred from circumstantial evidence. *United States v. Schaffer*, 183 F.3d 833, 843 (D.C. Cir. 1999) (citing, *inter alia*, *Chedick v. Nash*, 151 F.3d 1077, 1083 (D.C. Cir. 1998) (despite absence of smoking gun, jury entitled to infer intent to defraud from circumstantial evidence)).  In a § 1347 case, "'intent [to defraud] can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits.'" *United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007) (quoting *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)); *see also United States v. Jemal*, No. 05-0359, 2007 U.S. Dist. LEXIS 21356, at *17-20 (D.D.C. Mar. 12, 2007).

In this case, the government presented compelling circumstantial evidence to support the conviction. It showed that defendant was the Chief Executive Officer and an owner of the Health Advocacy Center ("HAC"), the registered D.C. Medicaid provider, during the relevant time period. As defendant concedes, it showed that "Wheeler was responsible for the majority if not all of the [D.C. Medicaid] billing" on behalf of HAC. (Def.'s Mot. at 5.) Moreover, multiple witnesses testified that she controlled financial matters and was the only person who prepared and submitted claims to D.C. Medicaid.

The evidence also showed that hundreds of false claims were submitted, on behalf of HAC, to D.C. Medicaid for manual therapy services. Some of these claims were for services that could not have been rendered to patients because they were not at HAC, but rather were hospitalized at another facility. In other cases, bills were submitted that made "impossible" claims, *i.e.*, that twenty-four hours of massage therapy had been provided to a single patient in one day. The government also introduced bills that had been submitted for services that HAC could not provide, because, according to some of the witnesses, HAC did not have the necessary equipment.

The government presented evidence that HAC received more than $3 million for approximately 600 false manual therapy claims submitted during the time period covered by the indictment. This money was deposited into bank accounts controlled by Wheeler. It also presented evidence that Wheeler purchased numerous cars and attempted to buy property in Florida. While defendant argues that these expenditures were not lavish (Def.'s Reply at 5), she cannot seriously dispute that she personally benefitted financially from receipt of the millions of dollars in unearned D.C. Medicaid funds. *See United States v. Bradley*, 644 F.3d 1213, 1247

(11th Cir. 2011) (receipt of disproportionate profits from scheme permits inference of intent to defraud).

Finally, the jury heard testimony that would allow it to conclude that Wheeler intended to conceal her billing practices. For example, Acquinette Robinson testified that Wheeler refused to let special agents enter the Sheridan Office and, at 4:00 a.m. the following morning, she moved all the patient files from HAC to her home in Chevy Chase, Maryland. From this testimony, the jury could infer that Wheeler intended to hide information—or conceal the absence of any supporting documentation—relating to her Medicaid claims.

Moreover, defendant's Rule 29 challenge rests primarily on disputed issues of fact—whether HAC had the necessary equipment for certain services; whether any other HAC employees ever submitted bills; whether Wheeler actually reviewed bills rather than merely submitted them; and whether her sudden removal of patient files from the HAC facility suggests an intent to conceal fraudulent billing. (*See* Def.'s Mot. at 4-5; Def.'s Reply at 3-5).[2] However, the existence of disputed factual issues is not grounds to overturn a jury's verdict. Ultimately, the evidence admitted at trial and the inferences that can be drawn therefrom were sufficient for a jury to find that the defendant had the requisite knowledge and intent to defraud the D.C. Medicaid program. Even if the resolution of factual disputes was a close call (which it was not), "'the evidence reasonably permits a verdict of acquittal or a verdict of guilt, in which case the

---

[2] Defendant's argument that the facts in his case are distinguishable from *Dearing*, 504 F.3d 897, and other health care fraud convictions is unavailing. *See Choiniere v. United States*, No. 3:07-cv-27RM, 2009 U.S. Dist. LEXIS 3314, at *31 (N.D. Ind. Jan. 14, 2009) ("[These cases] do[n't] stand for the proposition that the only way to establish the willfulness element is to prove that the defendant had been notified that his conduct was unlawful and yet continued to engage in that conduct."). Whether the evidence in those cases is present in this case is not the issue; rather, it is whether the evidence here supports the jury's verdict, which it does.

decision was for the jury to make.'" *United States v. Cabrera*, 734 F. Supp. 2d 66, 87 (D.D.C. 2010) (quoting *United States v. Curley*, 160 F.2d 229, 237 (D.C. Cir. 1947)).

## II.     RULE 33

Federal Rule of Criminal Procedure 33 permits "a court [to] vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The Rule does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Cabrera*, 734 F. Supp. 2d 66, 87 (D.D.C. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). "Nevertheless, courts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *Id.* A defendant has a heavy burden under Fed. R. Crim. P. 33(a). "[T]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand . . . . This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (quoting *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991) (omission in original)).

Defendant argues that a new trial is warranted based on "the government's deliberate misconduct," meaning two statements from government witnesses during their testimony at trial and an "inflammatory" statement by the government in its closing argument. (Def.'s Reply at 9.) Specifically, defendant refers to (1) a single remark made by Michael Kirk in which he stated that he engaged in document forgery on behalf of the defendant; (2) a possible inference of Social Security fraud based on Dr. Sheila Jones's testimony; and (3) the government's suggestion, in closing argument, that taxpayers funded defendant's lavish lifestyle through Medicaid funds.

Even when considered collectively, these statements do not warrant a new trial.

First, it is flatly incorrect to describe the witness statements as the product of "deliberate misconduct." (Def.'s Reply at 9; *see* Def.'s Mot. at 10, 11.) The government did not elicit either statement, and it ensured that Kirk did not mention anything like that again.

Second, any possible prejudice from these witness statements or the government's closing was mitigated by the Court, which gave strong curative instructions immediately after each statement. Following Mr. Kirk's statement, the Court struck the testimony and gave a curative instruction. Similarly, following Ms. Jones' statement—which merely *could have* given rise to an inference of improper use of Social Security checks—the Court instructed the jury that "there's no suggestion there's been any impropriety regarding any of these . . . checks." (Trial Tr. vol.4, 92:9-92:12, July 6, 2012.) Finally, after the government's reference to the American taxpayer in closing argument, the Court, using defendant's proposed instruction, ordered the jury to disregard the government's statement. Since it is presumed that the jury followed the Court's instructions, *see United States v. Foster*, 557 F.3d 650, 655 (D.C. Cir. 2009) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it[.]"), these statements cannot have impacted the verdict.

Third, "a new trial should be granted only if the defendant has shown that the error was substantial, not harmless, and that the error affected the defendant's substantial rights." *United States v. Williams*, 825 F. Supp. 2d 128, 132 (D.D.C. 2011) (internal quotation marks omitted). "An error affecting 'substantial rights' must have a 'substantial and injurious effect or influence in determining the . . . verdict.'" *United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. Cir. 2007) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004)).

Given the strength of the government's case (*see supra* Section I), there is no basis to find that the three immediately-corrected statements to which defendant objects had a substantial effect on the verdict.  *See United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000) (observing that, in analyzing prosecution's misstatements, the court may consider "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error") (citing *Gaither v. United States*, 413 F.2d 1061, 1079 (D.C. Cir. 1969)).  However, the Court recognizes that "[t]he inquiry cannot be merely whether there was enough evidence to support the result, apart from the phase affected by the error.  It is rather, even so, whether the error itself had substantial influence.'"  *United States v. Pineda*, 592 F.3d 199, 200 (D.C. Cir. 2010) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).  Although the government's comment in closing argument was ill-chosen, it was hardly "incendiary," as defendant has suggested.  (Def.'s Reply at 9.)  Therefore, even assuming *arguendo* that the errors had some effect notwithstanding the curative instructions, the Court finds that they could not have had a substantial influence on the jury.

Defendant also argues that a new trial is warranted under Rule 33 because, as she asserted in her Rule 29 motion, there was insufficient evidence to support the jury's verdict.  (*See* Def.'s Mot. at 13.)  For the reasons that this argument fails under Rule 29 (*see supra* Section I), it also fails under Rule 33.

### III.   MULTIPLICITY

The Double Jeopardy Clause of the Fifth Amendment "protects [defendants] against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  If a single offense is alleged in a number of counts, "[a]n indictment is multiplicitous, and thereby defective." *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992).  As the Supreme Court explained in *Blockburger v. United States*, 284 U.S. 299, 304

(1932), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." The *Blockburger* test requires a "comparison of the statutorily-prescribed elements of the offenses, not the constituent facts either alleged or proven." *United States v. Coachman*, 727 F.2d 1293, 1301 (D.C. Cir. 1984) (footnote omitted).

Defendant was indicted for fraudulent billing practices in violation of two statutes: § 1347 (health care fraud) and § 1035 (false statements relating to health care matters). She has moved to dismiss all counts under § 1035 (Counts 2 through 25), arguing that they are multiplicitous of the single charge of health care fraud under § 1347 (Count 1).[3]

To prove a violation of § 1347, the government must show: (1) that the defendant executed or attempted to execute; (2) a scheme; (3) to defraud a health care benefit program which affects commerce or to obtain any money or property owned by or under the custody and control of a health care benefit program which affects commerce, by means of false or fraudulent pretenses, representations, or promises which were material; (4) in connection with the delivery of or payment for health care benefits, items, or services; and (5) that the defendant did so knowingly and willfully. (Final Jury Instructions at 20, *U.S. v. Wheeler*, 11-cr-151 (July 13, 2012) ("Jury Instr.").) To prove a violation of § 1035, the government must show: (1) that the defendant made a materially false, fictitious, or fraudulent statement or representation or made or

---

[3] Defendant filed a pre-trial motion to dismiss Counts 2 through 35 as multiplicitous, which is incorporated by reference in its renewed motion. (*See* Def.'s Mot. at 7) (incorporating Def.'s Mot. to Dismiss Counts 2 Through 40 as Multiplicitous ("Def.'s Pretrial Mot.") ).) The Court denied defendant's pretrial motion without prejudice since "'multiplicity claims are better sorted out post-trial.'" *United States v. Wheeler*, No. 11-cr-151, 2012 U.S. Dist. LEXIS 70837, at *4 (D.D.C. May 22, 2012) (quoting *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999) (alternation omitted).)

used a materially false writing or document; (2) in connection with the delivery of or payment for health care benefits, items, or services involving a health care benefit program; and (3) that the defendant did so knowingly and willfully. (Jury Instr. at 22.)

Defendant concedes that § 1347 requires proof of a fact—the existence of a "scheme"—that § 1035 does not. (*See* Def.'s Pretrial Mot. at 6.) She argues, however, that "§ 1035 does not have any unique elements of proof from § 1347" because a conviction under § 1347 "by definition, entails the making of some false, fraudulent, or misleading statement in order to perpetrate that fraud." (Def.'s Mot. at 7.) However, that is simply not so.

For the purposes of § 1347, a "scheme to defraud" can be committed through a plan, pattern or course of action involving . . . a pretense, representation, or promise . . . ." (*See* Jury Instr. at 20.) Therefore, to obtain a conviction under § 1347, the government was not required to show that a false statement was made at all. Moreover, even if a false statement had been made, the government did not have to show that defendant made the statement, but only that she "executed or attempted to execute" a scheme "involv[ing]" it. (Jury Instr. at 2; *see* § 1347.) By contrast, to prove Counts 2 through 35, the government had to show that the defendant actually made a false statement or representation or that she made or used a document containing a false statement. (*See* § 1035; Jury Instr. at 22.) This element is not required under § 1347. Thus, each offense requires proof of an element that the other does not. *See United States v. Sachakov*, 812 F. Supp. 2d 198, 209 (E.D.N.Y. 2011).

While this is a matter of first impression in this Circuit and the Court is not aware of any case that is precisely on point, the Court finds support for its analysis in a similar inquiry into whether bank fraud, under 18 U.S.C. § 1344, is multiplicitous of the crime of making false statements to a federal lender, under 18 U.S.C. § 1014. Numerous circuits have analyzed those

statutes and found that they satisfy the *Blockburger* test since § 1344 requires proof of a "scheme or artifice to defraud" and § 1014 requires proof of a false statement, neither of which is required by the other. *See United States v. Fraza*, 106 F.3d 1050, 1054 (1st Cir. 1997) ("Because it is possible to violate either statute without violating the other, we believe the best view is that these two counts are not multiplicitous."); *United States v. Nash*, 115 F.3d 1431, 1438 (9th Cir. 1997) ("Although there are probably few cases of bank fraud that do not involve making a false statement to a federally insured institution, section 1014 requires that the statement be made to influence action on a loan. The bank fraud statute, which is written more broadly, technically does not."); *accord United States v. Abu-Shawish*, 175 Fed. Appx. 41, 44 (7th Cir. 2006); *United States v. Chacko*, 169 F.3d 140, 147 (2d Cir. 1999); *United States v. Dupre*, 117 F.3d 810, 818 (5th Cir. 1997). The apparent consensus that these statutes do not violate *Blockburger* reinforces the conclusion that the counts here are not multiplicitous.

Moreover, even if § 1035 were a lesser included offense of § 1347, that would not end the inquiry, because "punishments may be imposed for both 'if Congress intended that they be imposed.'" *United States v. White*, 116 F.3d 903, 932 (D.C. Cir. 1997) (*quoting United States v. Baker*, 63 F.3d 1478, 1494 (9th Cir. 1995)). As the Court noted in its prior opinion, the fact that Congress created two distinct offenses in the United States Code raises the presumption that it intended to permit cumulative punishments. *Wheeler*, 2012 U.S. Dist. LEXIS 70837, at *3-4; *see Harris*, 959 F.2d at 251-52; *Sachakov*, 812 F. Supp. 2d at 208-09. Absent evidence to the contrary, the Court would have to conclude that Congress intended for cumulative punishments. Therefore, defendant's motion to dismiss Counts 2 through 35 is denied.

## CONCLUSION

For the foregoing reasons, the Court denies defendant's motion for acquittal, motion for dismissal of Counts 2-35 as multiplicitous, and motion for a new trial [ECF No. 55].

                                                                                                                                  /s/
                                                          ELLEN SEGAL HUVELLE
                                                          United States District Judge

Date:   September 5, 2012